UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                  )<br>)<br>ALAN NEAL SCOTT,                    )<br>)<br>            Defendant                         )<br>) | Criminal No.  20-CR-10165-LTS |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this memorandum in support of its recommendation that the defendant Alan N. Scott ("Scott") be sentenced to 87 months incarceration, three years of supervised release, restitution of at least $343,527, and forfeiture of $343,527.  Under the plea agreement pursuant to Rule 11(c)(1)(C), the parties have agreed upon a plea that requires a term of incarceration between 48 and 87 months.

This serial scammer richly deserves the full 87 months incarceration.  He has lived a life of deceit of others for his own gain for nearly half a century.  His criminal record includes twelve prior federal convictions in four different states and multiple terms of incarceration.  Some of the crimes at issue here were committed while under supervised release from a previous sentence.  The criminal scheme that the defendant conducted was complex and sophisticated, resulting in the fraudulent procurement of hundreds of thousands of dollars in government benefits.  He has demonstrated no remorse and his history makes clear that he will not change his fraudulent ways.  In fact, it makes clear that a significant term of incarceration is the only option to prevent this defendant from continuing to commit additional crimes.

**FACTUAL SUMMARY**

On July 1, 2021, Scott pleaded guilty to all counts of the Indictment, which included the following charges: Counts One–Four: Mail Fraud in violation of 18 U.S.C. § 1341, Count Five: Wire Fraud in violation of 18 U.S.C. § 1343, and Counts Six–Ten: Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a).

As set forth in the PSR and admitted in his plea, from 2014 through 2020, Scott conducted a scheme to defraud the Massachusetts Department of Unemployment Assistance ("DUA") by filing fraudulent claims for unemployment insurance ("UI"), Pandemic Unemployment Assistance ("PUA"), and Federal Pandemic Unemployment Compensation ("FPUC").

From about November 2014 to about April 2018, Scott submitted fraudulent UI benefits claims to the DUA both in his own name and in the names of at least 20 other people. These claims falsely stated that he and each individual that he named in the submissions had previously worked for Hamilton Burke and Associates Inc. ("HBA"), a purported Massachusetts debt collection company. These fraudulent claims caused DUA to send UI benefits payments to various addresses associated with Scott, which he then deposited into various bank accounts opened and controlled by him. The total amount of payments that Scott received through these fraudulent claims totaled more than $350,000.

From about May 2020 to about July 2020, Scott also collected thousands of dollars from the submission of fraudulent claims for PUA benefits that he submitted in his own name and in the names of others.

## GUIDELINES CALCULATION

The parties agree that the defendant's total "offense level" under the Guidelines is level 20.  This is calculated as follows:

| | | |
|---|---|---|
| Base offense level | 7 | § 2B1.1(a) |
| Losses from the offenses more than $250,000 but not more than $550,000 | +12 | § 2B1.1(b)(1)(G) |
| More than 10 victims | +2 | § 2B1.1(b)(2) |
| Use of sophisticated means | +2 | § 2B1.1(b)(10)(C) |
| Accepted responsibility | -3 | § 3E1.1 |
| **Total offense level:** | **20** | |

The parties further agree that the defendant's sentence for Counts Six–Ten is 24 months, to run consecutive to any term of imprisonment imposed for Counts One–Five (USSG § 2B1.6).

### Criminal History

Defendant's criminal record, as set forth in the Pretrial Services Report, places him in Category V, based upon three prior felony convictions for which he was incarcerated for more than one year in the last fifteen years (3 criminal history points each) plus two points under USSG 4A1.1(d) because he committed the instant offense while on supervised release for one of those convictions.[1]

The total offense level of 20 in Category V yields a range of 63-78 months.  With the added 24 months on and after based upon the aggravated identity theft, this results in a final guideline range of 87-92 months.

---

[1] The defendant was not released from supervised release for his 1997 conviction in the District of Massachusetts for Bank Fraud and Possession of Forged Securities until June 30, 2016 (five years after his release on 7/1/2011).  The conduct in the current case began in at least November 2014.  PSR. ¶ 11.

### III. SENTENCING RECOMMENDATION

A sentence of 87 months, which is the low end of the guideline range, is fully merited and necessary here to appropriately punish this serial con artist. The 87 months is justified not just by the defendant's serious crimes in this case, but also because his criminal history demonstrates such a lifetime of serious fraud crimes. Nothing other than incarceration can stop him.

A. Nature, Circumstances, and Seriousness of the Offenses

The defendant conducted a sophisticated scheme to defraud the government by obtaining benefits from programs designed to aid the unemployed – who cannot find employment. He also cheated the programs designed to provide relief during the COVID-19 pandemic. Defendant's crimes involved multiple government programs and the identities of at least 20 other people. He used multiple addresses, post office boxes and bank accounts. The complexity of the scheme, carried out over six years, is what enabled Defendant to fraudulently obtain such a significant amount—hundreds of thousands of dollars in benefits.

B. History and Characteristics of the Defendant

The defendant has a long criminal history, nearly all of which consists of convictions for similar crimes of deceit. Only a few of the defendant's many prior convictions are even counted in his criminal history score. His full history of such fraudulent behavior is incredible. As set forth in the chart below, he has committed fraud schemes since 1972 – when he was 19 years old.

| No. | Date of Conviction | Charge | |
|---|---|---|---|
| 1 | 3/2/1972 | Worthless check | Jefferson County Circuit Court, AL |
| 2 | 12/2/1972 | False pretenses | Jefferson County Circuit Court, AL |
| 3 | 8/7/1974 | Mail fraud | U.S.D.C., N. D. AL |
| 4 | 11/17/1977 | False loan applications, Mail fraud | U.S.D.C., N.D. AL |

4

| 5  | 12/13/1979 | False claims | U.S.D.C., W.D. TN |
| 6  | 5/23/1980  | False claims, obstruction | U.S.D.C., N.D. AL |
| 7  | 7/17/1980  | False claims | U.S.D.C., N.D. AL |
| 8  | 10/17/1983 | False claims | U.S.D.C., N.D. AL |
| 9  | 8/20/1984  | False Claims | U.S.D.C. W.D. TN |
| 10 | 1/28/1987  | Receiving Stolen Property/Firearm Possession of firearm w/out permit | Suffolk County Superior Court, MA |
| 11 | 8/17/1989  | False claims | U.S.D.C., MA |
| 12 | 4/19/1990  | Larceny More | Dedham District Ct, MA |
| 13 | 10/16/1992 | Counterfeit MV Document/False Application | Charlestown District Ct., MA |
| 14 | 12/1/1997  | Bank fraud, Forged securities | U.S.D.C., MA |
| 15 | 6/9/1998   | False claims | U.S.D.C., MA |
| 16 | 3/16/1999  | Bank fraud conspiracy | U.S.D.C., E.D.N.Y. |
| 17 | 2/9/2005   | Mail fraud conspiracy | U.S.D.C., E.D.N.Y. |

He has at least 17 separate convictions, including 12 prior federal fraud convictions. Moreover, as explained in the PSR, these prior crimes involved a variety of elaborate schemes, masterminded by the defendant, to defraud many different victims. He organized co-conspirators to steal identities to submit fraudulent applications for car loans. See C.R. 07-CR-304 (E.D.N.Y. 2008). He used a position as a paralegal to steal client checks from the law firm. (98-CR-10178, D. MA 2000). He filed numerous false tax returns using false identities and committed numerous other bank fraud scams. He violated the terms of his release on numerous occasions, including submitting falsified records of employment during his last term of supervised release. He received numerous disciplinary reports while incarcerated, including for charges such as using unauthorized email to communicate with other inmates, sending money to another inmate, and falsely marking packages as "legal mail" in an effort to ensure that packages would not be searched by prison officials. There is simply no denying that the defendant is a very clever and experienced criminal mastermind.

Defendant submitted a few letters concerning his love for his dog and treatment of a friend and a fellow student. None of this comes close to mitigating the many frauds he has

committed or in any way suggesting that he will not continue to commit such frauds if permitted. To the contrary, he committed the instant frauds while living with this friend and using this friend's address to receive the fraudulently obtained checks. Moreover, given defendant's history, it is simply impossible to tell if anything in his life is genuine, or whether any actions are part of an attempt to con others or this Court.

The seven-year sentence recommended by the government here is thus both necessary and deserved to appropriately to punish and deter such a sophisticated fraudster and to protect the public from further crimes by a defendant with such an extraordinary and extensive criminal history.

C. The Need for Specific Deterrence

A sentence including a significant term of incarceration is also important to deter this specific defendant and protect society from his relentless pursuit of fraud upon others. It is not drug abuse or violent crime alone that makes a criminal a danger to society, it is a lack of respect for the rules of society. *United States v. Evano*, 553 F.3d 109, 113 (1st Cir. 2009). This defendant has demonstrated over and over again that he is a danger to society. He has stolen the funds and identities of others over and over again.

Previous sentences to incarceration have clearly failed to sufficiently deter the defendant's criminal activity. He conducted part of the criminal activity at issue here while on supervised release from previous sentences. This is a case where specific deterrence in the form of incarceration is plainly required. Nothing except incarceration appears to work to keep this defendant from committing significant frauds and victimizing others. It is his way of life.

D. Need to Promote Respect for the Law and Just Punishment and General Deterrence

Such a punishment is also appropriate to promote respect for the law and just

punishment. It is critical to the economic efficiency and continued survival of important government social insurance programs that benefits be provided only to those who qualify for them. The Department of Labor estimates about 10% of unemployment payments are improper, with a significant portion attributable to fraud. https://www.oig.dol.gov/significant_concerns.htm. Fraudulent procurement of such benefits both erodes public trust in the programs and stresses the system's ability to efficiently deliver benefits to vulnerable people. It is important to make clear that such extensive attempts to abuse these government benefits will result in significant terms of incarceration. Such a message is critical to deter others who may see such programs as an easy target. It is also important that those who follow the law see that such a serial fraudster pays a heavy price for his crimes.

  E. The Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct

The legislative history of the Sentencing Reform Act of 1984, which created the United States Sentencing Commission, made clear that one of the Act's goals was to rectify the serious problem in the criminal justice system that white-collar offenders were not being adequately punished. *See* S. Rep. No. 98-225, at 77 (1983) ("[S]ome major offenders, particularly white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses."). Then-Judge Breyer, an original member of the Sentencing Commission, explained:

> The Commission found in its data significant discrepancies between pre-Guideline punishment of certain white-collar crimes, such as fraud, and other similar common law crimes, such as theft. The Commission's statistics indicated that where white collar fraud was involved, courts granted probation to offenders more frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation. To mitigate the inequities of these discrepancies, the Commission decided to require short but certain terms of confinement for many white collar offenders, including tax, insider trading, and antitrust offenders, who

previously would have likely received only probation.

*See* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 20-21 (1988). The recommended sentence is also consistent with the need to avoid unwarranted disparities in sentences. Eighty-seven months is at the bottom of his guidelines range. While there are few individuals who have this defendant's history of fraud convictions, those that do commit serial frauds have been appropriately sentenced to such serious terms of incarceration. This recommended sentence is lower than a number of sentences of defendants who did not have nearly this extensive a criminal history. *See, e.g.*, *United States v. White,* (D. MD 2021), https://www.justice.gov/usao-md/pr/serial-fraudster-sentenced-8-years-federal-prison-conspiring-steal-mail-stealing-benefits (serial fraudster sentenced to 8 years incarceration); *United States v. Yohai,* (C.D. CA 2019), https://www.justice.gov/usao-cdca/pr/serial-con-artist-sentenced-more-9-years-federal-prison-67-million-swindle-investors; (serial con artist sentenced to more than 9years), *United States v. Hampton*, (C. D. Ill 2019) https://www.secretservice.gov/press/releases/2019/09/serial-fraudster-sentenced-10-years-prison-bank-fraud (serial fraudster sentenced to 10 years incarceration).

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of 87 months of incarceration, three years of supervised release, restitution in the amount of $343,527, and forfeiture order of $343,527.

                Respectfully submitted,

                NATHANIEL R. MENDELL
                United States Attorney

       By:   */s/ Sara Miron Bloom*
              SARA MIRON BLOOM
              Assistant United States Attorney

Date:   October 1, 2021

**<u>Certificate of Service</u>**

I hereby certify that this document was filed under seal with the Clerk of Courts on October 1, 2021, and will be sent via email to participants as identified on the Notice of Electronic Filing.

       By:   */s/ Sara Miron Bloom*
              SARA MIRON BLOOM
              Assistant United States Attorney